UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

PROGRESSIVE NORTHERN INSURANCE
COMPANY,

      Plaintiff,

v.

Civil No. 4:22cv13

M&J AUTO CENTER LLC, d/b/a M&J
CAR SOLUTIONS, MARLON HARVEY,
DARRIN ROBINSON, CHARLES BRIAN
DIGGS, Administrator of the
Estate of Hailey Diggs,
Decedent, TIDEWATER AUTOMOBILE
ASSOCIATION OF VIRGINIA, INC.,
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and SDHUNT,
LLC, d/b/a M&J CAR SOLUTIONS
AND BATTERIES,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on a motion for summary judgment filed by plaintiff Progressive Northern Insurance Company ("Plaintiff"). ECF No. 92. After careful consideration of the briefs submitted by the parties, the Court determines that a hearing is unnecessary because the facts and legal contentions are adequately presented, and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J). For the reasons discussed below, the Court **GRANTS** Plaintiff's motion for summary judgment. ECF No. 92.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this motion for summary judgment are largely undisputed.   Compare ECF No. 92-1 with ECF Nos. 94-96. This case arises out of a fatal, three-vehicle accident that occurred on February 23, 2021 (the "Accident").   ECF No. 92-1, at 2.   At the time of the Accident, defendant Darrin Robinson ("Robinson") was operating a 2014 Hino flat-bed tow truck (the "2014 Hino"), which was one of the three vehicles involved in the Accident.   Id.   Following the Accident, defendant Charles Brian Diggs ("Diggs") filed a lawsuit (the "Underlying Suit"), styled Charles Brian Diggs, Administrator for the Estate of Hailey Diggs, deceased v. The American Automobile Association, Inc., et al., in the Circuit Court for the City of Newport News (Case No. CL2300751P-00) on behalf of the estate of his daughter Hailey Diggs, who was killed in the Accident.   Id.

Defendant M&J Auto Center, LLC, ("M&J Auto") "is a towing company and body shop," and defendant Marlon Harvey ("Harvey") "was an employee of M&J since its formation and assisted in its operations on a daily basis."   Id.   In January 2021, Harvey, acting on behalf of M&J Auto, purchased from Plaintiff the insurance policy at issue in this matter, Policy No. 03212473-000 (the "M&J Policy").   Id. at 3.   Harvey requested only one vehicle to be listed on the declarations page of the M&J Policy: a 2012 Dodge Ram 4500 (the "2012 Dodge").   Id.

2

Defendant SDHunt, LLC, ("SDHunt") "provides towing and roadside assistance services" and "does business under a fictitious name, M&J Car Solutions and Batteries." Id. at 3-4. Pursuant to a verbal agreement, M&J Auto sometimes subcontracted with SDHunt to complete towing requests that M&J Auto received from the American Automobile Association ("AAA"). ECF No. 94, at 8; ECF No. 95, at 2. Ronnista Fraser ("Fraser"), the owner of SDHunt, purchased a separate commercial auto policy (the "SDHunt Policy") from Plaintiff in October 2020. ECF No. 92-1, at 4. In November 2020, Fraser purchased the 2014 Hino on behalf of SDHunt and, in January 2021, requested that the 2014 Hino be listed on the declarations page of the SDHunt Policy. Id. Thus, at the time of the Accident, the 2014 Hino was listed on the SDHunt Policy but was not listed on the M&J Policy. Id.

Plaintiff filed its initial complaint in this action on July 30, 2021. ECF No. 1. On January 21, 2022, Plaintiff filed an amended complaint against: M&J Auto; Harvey; Robinson; Diggs; Tidewater Automobile Association of Virginia, Inc., ("TAA"); State Farm Mutual Automobile Insurance Company ("State Farm"); and SDHunt (collectively, "Defendants").[1] ECF No. 51 ¶¶ 2-9. Plaintiff has alleged, and seeks a declaration, that "under the

---

[1] Initially, Plaintiff also named as defendants: East Coast Truck & Trailer Sales, Inc.; Erie Insurance Company; and Karla Noelle Sherman. Since then, all three parties have been voluntarily dismissed from the case. ECF Nos. 20, 30, 76.

terms and provisions of [the M&J Policy, Progressive] does not owe or have a duty to defend or indemnify any person or entity for any claims, of any nature, arising out the Accident." Id. ¶ 60(K). On June 21, 2022, Plaintiff moved for default judgment against M&J Auto, Harvey, Robinson, and SDHunt. ECF Nos. 78-81. Thereafter, on November 14, 2022, the Court stayed Plaintiff's motions for default judgment pending the resolution of the claims against the other three Defendants (Diggs, TAA, and State Farm) to avoid the risk of logically inconsistent judgments. ECF No. 85.

On June 13, 2023, Plaintiff filed the instant motion for summary judgment, arguing that there is no coverage available under the Policy for claims related to the Accident because the 2014 Hino is not an "insured auto" under the terms of the Policy. ECF No. 92-1. Defendants State Farm, Diggs, and TAA filed briefs in opposition on June 27, 2023, ECF Nos. 94-96, and Plaintiff filed a reply brief on June 30, 2023, ECF No. 97. Accordingly, Plaintiff's motion is ripe for consideration.

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a district court shall grant summary judgment in favor of a movant if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat

4

an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012).

Although the initial burden on summary judgment falls on the moving party, once a movant properly presents evidence supporting summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings, but instead must set forth specific facts in the form of exhibits and sworn statements illustrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "Because '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge,'" the Court must only evaluate the evidence to the extent necessary to determine whether there is "sufficient disagreement to require submission to a jury or whether [the evidence] is so one-sided that one party must prevail as a matter of law." McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Liberty Lobby, 477 U.S. at 251-52, 255). In making its determination, "the district court must view the evidence in the light most favorable to the nonmoving party." Jacobs v. N.C.

Admin. Off. of the Cts., 780 F.3d 562, 568 (4th Cir. 2015) (cleaned
up) (citing Tolan v. Cotton, 572 U.S. 650, 657 (2014)).

### III.  DISCUSSION

The question presented to the Court by Plaintiff's motion for
summary judgment is one of contract interpretation.  Under Virginia
law,[2] "[a]n insurance policy is a contract, and, as in the case of
any other contract, the words used are given their ordinary and
customary meaning when they are susceptible of such construction."
Hill v. State Farm Mut. Auto. Ins. Co., 237 Va. 148, 152, 375
S.E.2d 727, 729 (1989).  "[I]n the absence of an ambiguity, . . .
[the Court] must interpret the contract by examining the language
explicitly contained therein."  Graphic Arts Mut. Ins. Co. v. C.W.
Warthen Co., 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990).
"[W]here an agreement is complete on its face, is plain and
unambiguous in its terms, the court is not at liberty to search
for its meaning beyond the instrument itself."  Id. (alteration in
original) (quoting Globe Iron Constr. Co. v. First Nat'l Bank of
Boston, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)).

An insurer's obligation to defend "is broader than its
obligation to pay" and "arises whenever the complaint against the

---

[2] In diversity actions such as this one, a federal "district court,
sitting in Virginia, [is] required to apply Virginia law."  Demetres v.
East West Constr., Inc., 776 F.3d 271, 273 (4th Cir. 2015) (citing Klaxon
Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941)).  Here, the
parties appear to be in agreement that the M&J Policy, which was issued
in Virginia, must be interpreted pursuant to Virginia law.

insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." Brenner v. Laws. Title Ins. Corp., 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990) (citation omitted). "However, if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend." Id. (internal quotation marks and citation omitted). This analysis, "commonly known as the 'eight corners rule,'" requires the Court to "compar[e] the 'four corners' of the underlying complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." AES Corp. v. Steadfast Ins. Co., 283 Va. 609, 617, 725 S.E.2d 532, 535 (2012) (citations omitted).

### A. The Allegations in the Underlying Suit

The Court therefore turns first to the allegations in the Underlying Suit brought by Diggs against, among others, TAA, M&J Auto, SDHunt, Harvey, and Robinson. ECF No. 92-6. In relevant part, Diggs alleges that M&J Auto and SDHunt sent Robinson to provide roadside assistance and towing services to a TAA member and that, at the time of the Accident, Robinson was acting as an agent and employee of M&J Auto, SDHunt, and/or TAA. Id. ¶¶ 11-12. Diggs alleges that, when Robinson arrived at the Accident

scene in the flat-bed tow truck he was operating,[3] Robinson left the tow truck "protrud[ing] nearly halfway into the left-hand travel lane" and "chose not to place cones, flares, or other warning devices on the roadway to warn motorists," even though he "knew or should have known that visibility and roadway conditions on Route 199 west were poor." Id. ¶¶ 40-41, 44. According to Diggs's complaint, Hailey Diggs was driving westbound in the left-hand travel lane in a Jeep Wrangler, and her Jeep "struck the rear of Defendant Robinson's tow truck and was thrown into the right-hand travel lane." Id. ¶ 48. Hailey Diggs was ejected from her Jeep and then was struck and killed by a third vehicle, which had swerved to avoid the tow truck. Id. ¶¶ 49-50.

### B.  The M&J Policy

The M&J Policy provides commercial auto insurance coverage. ECF No. 92-9, at 2. The Policy lists Defendant M&J Auto as the named insured and Defendant TAA as an additional insured. Id. at 2-3. As stated on the declarations page, the "policy contract is form 6912 (06/10)," and, as relevant here, the "contract is modified by forms . . . [including] CA0116 (04/15)." Id. at 2. The declarations page lists only one vehicle on the auto coverage

---

[3] Although Diggs initially identified the tow truck as a 2018 Dodge Ram in his complaint in the Underlying Suit, the parties (both in this case and in the Underlying Suit) now agree that the tow truck in question was actually the 2014 Hino. See, e.g., ECF No. 92-1, at 2; ECF No. 94, at 1; ECF No. 95, at 6; ECF No. 92-2, at 1 (response to request for admission in Underlying Suit).

schedule: the 2012 Dodge.  This, of course, means that the auto coverage schedule does not list the 2014 Hino that Robinson was operating at the time of the Accident.

The base coverage form (Form 6912) (the "Base Form"), which is titled "Commercial Auto Policy," provides coverage for "Liability to Others" in "Part I."  ECF No. 92-9, at 7, 12.  The Base Form's insuring agreement states, in relevant part:

> Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. . . . **We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I.

Id. at 12.  As indicated by the bold typeface, "insured auto" is a defined term in the Base Form.  The "General Definitions" list defines "insured auto" as:

> a. Any **auto** specifically described on the **declarations page**; or
> b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
>    (i)   **you** acquire the **auto** during the policy period shown on the **declarations page**;
>    (ii)  **we** insure all **autos** owned by **you** that are used in **your** business;
>    (iii) no other insurance policy provides coverage for that **auto**; and
>    (iv)  **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.
>    . . .
> c. Any replacement **auto** on the date **you** become the owner if:

> (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
>
> (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
>
> (iii) no other insurance policy provides coverage for that **auto**.

Id. at 8-9.  The "Part I - Liability to Others" coverage further expands this definition to include, in relevant part, "[a]ny **temporary substitute auto**," id. at 13, which is defined in the General Definitions list as:

> any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

Id. at 11.

The M&J Policy also incorporates a number of endorsements, which are listed on the Policy's declarations page.  At issue on summary judgment is the endorsement titled "Virginia Changes - Business Auto Coverage Form" (Form CA 01 16 (04/15)) (the "Virginia Changes Endorsement").[4]  The Virginia Changes Endorsement states

---

[4] In his opposition brief, Diggs also references an endorsement titled "Hired Auto Coverage Endorsement," Form 1891 (03/08).  ECF No. 95, at 2.  However, this endorsement is not included in the list of incorporated endorsements that appears on the declarations page of the M&J Policy.  See ECF No. 92-9, at 2.  The endorsement does appear on a partial "Index of Endorsements," but that index specifically notes: "All forms appearing in this endorsement section do not automatically pertain to your policy.  Only those endorsements whose form numbers appear on your declarations page apply to your policy."  Id. at 32.  Because Form 1891 (03/08) does not appear on the declarations page, it does not apply to the M&J Policy or the coverage afforded thereunder.

that, "[f]or a covered 'auto' licensed or principally garaged in Virginia, this endorsement modifies insurance provided under the following: BUSINESS AUTO COVERAGE FORM." Id. at 59.  It goes on to set out several paragraphs, including paragraphs regarding liability coverage, that purportedly replace existing paragraphs in the "Business Auto Coverage Form." Id. at 59-65.

Unlike the Base Form, the Virginia Changes Endorsement does not use the defined term "insured auto," but rather uses the phrase "covered 'auto,'" providing:

> **We** will pay all sums an **"insured"** legally must pay as damages because of **"bodily injury"** or **"property damage"** to which this insurance applies, caused by an **"accident"** and resulting from the ownership, maintenance or use of a covered **"auto."**

Id. at 59.  Although the phrase "covered auto" is not defined within the Virginia Changes Endorsement or within the Base Form,[5] that term is defined in two other endorsements included in the M&J Policy.  The first — Form CA 21 21 (11/02), entitled "Uninsured Motorist Endorsement (Virginia)" — defines "covered auto" as:

> a motor vehicle, or a **temporary substitute**, with respect to which the **bodily injury** or **property damage** liability coverage of the policy applies.

---

[5] As used in the Virginia Changes Endorsement, the phrase "covered auto" incorporates the defined term "auto."  Although the Endorsement uses bold typeface to identify "auto" as a defined term, it provides no definition for that term or any of the other bolded terms used in the Endorsement.  The Base Form, however, defines "auto" in relevant part as "a land motor vehicle or trailer designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged."  ECF No. 92-9, at 8.

Id. at 41. The second — Form CA 22 46 (11/16), entitled "Virginia Medical Expense and Income Loss Benefits Endorsement" — provides a similar, though not identical, definition:

> a motor vehicle with respect to which:
>
> a. The **named insured** is the owner;
> b. The **bodily injury** liability or **property damage** liability coverage of the Coverage Form applies; and
> c. The insurance provided under this endorsement applies and for which a specific premium has been charged.

Id. at 49.

### C. Coverage Analysis

It is undisputed that, at the time of the Accident, the 2014 Hino was neither listed on the declarations page of the M&J Policy nor owned by M&J Auto. Consequently, there are only two potential paths to coverage, and therefore two coverage questions before the Court: (1) whether the 2014 Hino may be considered a "temporary substitute auto" under the liability coverage provided in the Base Form; and (2) whether, in the alternative, the 2014 Hino may be considered a "covered auto" under the liability coverage ostensibly provided in the Virginia Changes Endorsement.

### 1. Base Form - "Temporary Substitute Auto"

Under the terms of the Base Form, a vehicle may qualify as a covered "temporary substitute auto" only if it is used as a temporary substitute for an "insured auto" that "has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction." Id. at 11. Defendant TAA argues that Plaintiff has

not met its burden of establishing that the 2014 Hino was not a "temporary substitute auto" because Plaintiff has failed to demonstrate that the 2012 Dodge was not "withdrawn from normal use due to breakdown, repair, servicing, loss or destruction."[6] ECF No. 96, at 8. TAA acknowledges that Harvey testified that the 2012 Dodge was "operational" on the date of the Accident but argues that, even if the 2012 Dodge was operational, "[n]o information has been made known as to whether the vehicle at any point on the day of the Accident was being serviced or having any temporary repairs made." Id. at 8-9.

Although the "nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the forecasted evidence, . . . it cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Cooke v. Manufactured Homes, Inc., 998 F.2d 1256, 1260 (4th Cir. 1993) (internal quotation marks and citations omitted). Critically, TAA offers no evidence[7] to support

---

[6] State Farm also disputes Plaintiff's assertion that the 2012 Dodge was not "out of service" on the date of the Accident, ECF No. 94, at 3, but does not appear to argue that the 2014 Hino was a "temporary substitute auto" on that date. Rather, as discussed below, State Farm argues that the 2014 Hino is a "covered auto" under the terms of the Virginia Changes Endorsement.

[7] To be clear, the Court does not consider any evidence that speaks to the viability or potential outcome of the Underlying Suit; pursuant to the "eight corners" analysis, the Court considers the M&J Policy's coverage against the allegations made against any insureds in the Underlying Suit. However, to address the scope of the coverage provided by the M&J Policy — which does not explicitly list the tow truck involved in the Accident (the 2014 Hino) as an insured auto — the Court must

its speculation that it "is entirely possible that the 2012 Dodge Ram 4500 was operational for part of February 23, 2021, i.e. later in the day, but at the time of the Accident was undergoing a form of servicing, such as an oil change, or other minor repair." ECF No. 96, at 9.   The only evidence before the Court relating to whether the 2012 Dodge was out of service on the date of the Accident is deposition testimony from Harvey — who worked at M&J Auto and obtained the M&J Policy on M&J Auto's behalf — confirming that the 2012 Dodge was "operational" on that date.   ECF No. 92-7, at 29.   Without any contrary evidence, there is not "sufficient disagreement" to create a genuine issue of material fact.   Cooke, 998 F.2d at 1260 (quoting Liberty Lobby, 477 U.S. at 251–52). Therefore, the Court finds that, as a matter of law, the 2014 Hino was not a "temporary substitute auto" under the terms of the M&J Policy at the time of the Accident.

### 2. Virginia Changes Endorsement - "Covered Auto"

#### a. Application of Virginia Changes Endorsement

At the outset, the Court observes that it is not entirely clear what force, if any, the Virginia Changes Endorsement has in the M&J Policy.   Although the Virginia Changes Endorsement's form number is listed on the Policy's declarations page, indicating that the Endorsement is incorporated into the Policy, it appears

---

consider the evidence adduced in this case to determine whether there is a genuine issue of material fact regarding whether the 2014 Hino is covered under the M&J Policy based on its use on the date of the Accident.

that the Virginia Changes Endorsement is intended to modify a different base policy form than that used in the M&J Policy. The Endorsement itself states that it "modifies insurance provided under the following: BUSINESS AUTO COVERAGE FORM," ECF No. 92-9, at 59, but the Base Form for the M&J Policy is entitled "Commercial Auto Policy," not "Business Auto Coverage Form," id. at 6.

Moreover, there is an obvious functional mismatch between the Commercial Auto Policy Base Form and the Virginia Changes Endorsement, as the parties highlight in their briefing. The Endorsement, in relevant part, purports to modify specific paragraphs of the M&J Policy's liability coverage (rather than, for example, replacing the liability coverage in its entirety), but the stated modifications do not align with the text of the Base Form. As but one example, the Virginia Changes Endorsement states:

> Paragraph **A.1.b.** of **Section II - Liability Coverage** is amended by the addition of the following:
>
> 1. **Who Is An Insured**
>
>    The following are "**insureds**":
>
>    b. Anyone else while using with **your** permission a covered "**auto**" **you** own, hire or borrow except:
>
>       (6) **Your** customers, if **you** are in the motor vehicle business. . . .

Id. at 59. Attempting to incorporate this purported addition into the Base Form is seemingly fruitless. There is a clear divergence

in the titles of the two liability coverage provisions; the liability portion of the Base Form is "Part I," not "Section II," and is entitled "Liability to Others," not "Liability Coverage." Id. at 12. Within the Base Form's liability coverage section, there is no paragraph A.1.b. at all, and paragraph A.1. (which has no subparts) merely states that the term "insured" means "**You** with respect to an **insured auto**." Id. The phrases that the Endorsement suggests should be in the Base Form at paragraph A.1.b. ("Who Is An Insured"; "The following are 'insureds'"; and, "Anyone else while using with your permission a covered 'auto' you own, hire or borrow except") do not appear anywhere in the Base Form, whether at paragraph A.1.b. or elsewhere.

Defendants suggest that this mismatch means that the M&J Policy is ambiguous and therefore must be construed against Plaintiff as the insurer. But, as drafted, the Virginia Changes Endorsement cannot stand on its own. It is an endorsement that purports to replace or modify individual paragraphs of an existing liability coverage provided by a form entitled "Business Auto Coverage Form." It is difficult for this Court to discern how the Virginia Changes Endorsement can operate to modify the coverage provided by the M&J Policy if it cannot even be functionally integrated into the Base Form it is theoretically intended to modify. However, because the parties have not briefed this issue directly and because the Court concludes that summary judgment is

16

appropriate regardless, the Court assumes without deciding that the Virginia Changes Endorsement is properly incorporated into the M&J Policy and provides liability coverage under the terms of the Endorsement in connection with any "covered auto."

### b. "Covered Auto" Analysis

Defendants' primary argument is that the discrepancies between the Base Form and the Virginia Changes Endorsement — in particular, the use of the undefined term "covered auto" in the Endorsement — create ambiguity regarding which vehicles may be covered under the M&J Policy's liability coverage provisions and, consequently, that this ambiguity must be construed in Defendants' favor, precluding summary judgment for Plaintiff.   It is a basic tenet of insurance law in Virginia that, "[b]ecause insurance companies typically draft their policies without the input of the insured, the companies bear the burden of making their contracts clear," and, "[a]ccordingly, if an ambiguity exists, it must be construed against the insurer." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 636 (4th Cir. 2005) (citations omitted).   Still, in order for this tenet even to be relevant, there first must be an ambiguity in the policy.   "As with other contracts, when interpreting a[n insurance] policy[,] courts must not strain to find ambiguities or examine certain specific words or provisions in a vacuum, apart from the policy as a whole." Id. (citations omitted).   As the Virginia Supreme Court has explained:

> Contractual provisions are ambiguous if they may be
> understood in more than one way or if they may be
> construed to refer to two or more things at the same
> time. The ambiguity, if it exists, must appear on the
> face of the instrument itself. In determining whether
> the provisions are ambiguous, we give the words employed
> their usual, ordinary, and popular meaning. And
> contractual provisions are not ambiguous merely because
> the parties disagree about their meaning.

Nextel Wip Lease Corp. v. Saunders, 276 Va. 509, 516, 666 S.E.2d

317, 321 (2008) (citations omitted).

Therefore, the Court first must attempt to "determin[e] the

parties' intent from the words they have used" in the M&J Policy.

Virginia Farm Bureau Mut. Ins. Co. v. Williams, 278 Va. 75, 80,

677 S.E.2d 299, 302 (2009) (citations omitted). State Farm asserts

that, because of the mismatch between the Virginia Changes

Endorsement and the Base Form, "the endorsement must be interpreted

by reading the language of the endorsement standing on its own."

ECF No. 94, at 6. However, the Virginia Supreme Court has made it

clear that "[p]rovisions of an insurance policy must be considered

and construed together, and any internal conflicts between

provisions must be harmonized, if reasonably possible, to

effectuate the parties' intent." Williams, 278 Va. at 80, 677

S.E.2d at 302 (citations omitted).

Moreover, the Virginia Changes Endorsement does not provide

standalone coverage, but rather purports to modify existing

coverage language found elsewhere in the Policy. In the same vein,

although the Endorsement appears to utilize bold typeface to

signify the use of various defined terms (including the term "auto," which makes up part of the undefined term "covered 'auto'"), none of these terms are defined within the Endorsement itself. Consequently, the Endorsement plainly contemplates that it must be interpreted within the broader context of the M&J Policy as a whole.

While the M&J Policy certainly would be easier to parse without the mismatch between the Virginia Changes Endorsement and the Base Form, the mismatch nonetheless does not render the term "covered auto" ambiguous. Two other endorsements in the M&J Policy — both of which are also Virginia-specific endorsements — define the term "covered auto." Although the definitions are not identical, both capture the basic idea that a "covered auto" is a motor vehicle to which the M&J Policy's bodily injury or property damage liability coverage applies. See supra pp. 11-12. (quoting both definitions in full). This definition is perhaps unsurprising given that the plain language of the term "covered auto" suggests that it means an auto that is "covered" under the insurance coverage provided in the M&J Policy.

Like the definition of "insured auto" that is used in the liability coverage section of the Base Form, one of the two "covered auto" definitions specifically recognizes that "temporary substitute" vehicles are also autos for which liability coverage is provided. ECF No. 92-9, at 41. Moreover, that definition of

"temporary substitute" is nearly identical to the definition of "temporary substitute auto" in the Base Form but uses the term "covered auto" rather than the term "insured auto," further illustrating the basic interchangeability of those terms. Compare id. at 42 ("'**Temporary substitute**' means a motor vehicle that is being used in place of a **covered auto**. The **covered auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.") with id. at 11 ("'**Temporary substitute auto**' means any auto you do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.").[8]

Defendants attempt to draw a distinction between the term "covered auto" as used in the Virginia Changes Endorsement and the term "insured auto" as used in the Base Form by highlighting the paragraph in the Endorsement that purports to modify the definition of "insured" by suggesting that, with certain exceptions,[9]

---

[8] One other endorsement in the M&J Policy defines "temporary substitute auto" and again provides a nearly identical definition with the same use of the phrase "covered auto": "'**Temporary substitute auto**' means any **auto you** do not own while used with the permission of its owner as a temporary substitute for a **covered** auto that is out of service because of its: a. Breakdown; b. Repair; c. Servicing; d. Loss; or e. Destruction." ECF No. 92-9, at 58.

[9] This paragraph does not provide a complete definition of the term "insured." Rather, it appears to add an additional exception to the definition by adding a sixth item to a list of exceptions supposedly set forth in paragraph A.1.b. However, as noted earlier in this Opinion, there is no corresponding paragraph A.1.b in the Base Form, and it is therefore impossible to discern what the other five exceptions are.

"[a]nyone else while using with **your** permission a covered 'auto' **you** own, hire or borrow" is an "insured" under the M&J Policy. Defendants fixate on the "own, hire or borrow" language to argue that the phrase "covered auto" in the Virginia Changes Endorsement should be interpreted more expansively than the defined term "insured auto" in the Base Form. See ECF No. 94, at 8. This argument, however, is entirely unsupported — and indeed directly contradicted — by a closer comparison of the Virginia Changes Endorsement and the Base Form. With almost identical phrasing to the Virginia Changes Endorsement, the Base Form defines the term "insured" to include "[a]ny person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow." ECF No. 92-9, at 12. It is simply not reasonable to read the words "hire" and "borrow" in the Virginia Changes Endorsement as expanding coverage beyond that provided in the Base Form when the Base Form already includes functionally identical language. Further, the consistency of the language supports, rather than undermines, the conclusion that "covered auto" and "insured auto" are, at the very least, substantially interchangeable.

It is hardly surprising that the M&J Policy consistently provides liability coverage for an individual who uses with permission a vehicle that M&J hires or borrows, in addition to vehicles it owns, because a "temporary substitute auto" can be, by

21

definition, a "covered" or "insured" auto that M&J does not own. In other words, the inclusion of variations of the phrase "own, hire or borrow" in the definitions of "insured" reflects the same recognition as the extension of liability coverage to "temporary substitute" vehicles: the recognition that M&J's own vehicle might sometimes be out of commission for various reasons and that, on those occasions, M&J should be able to expect the same liability insurance coverage for a vehicle that M&J temporarily rents or borrows in order to continue its operations.

Defendants seem to suggest that this is just what happened here. See, e.g., ECF No. 94, at 8 ("M&J hired Darrin Robinson to operate the 2014 HINO."); ECF No. 95, at 2 ("There is no dispute Progressive's insured, M&J Car Solutions, on this occasion, contacted and hired M&J Car Solutions and Batteries to perform the tow for it on February 23, 2021."); ECF No. 96, at 7-8 ("[T]he company who owned the 2014 Hino involved in the accident, had been hired by M&J Auto by way of a subcontract, and was allegedly operating within M&J's permission pursuant to that subcontract, the 2014 Hino. The operator of the 2014 Hino, Darrin Robinson, thus would be considered an insured by operating with permission a hired auto."). However, the uncontested factual record simply cannot support that conclusion. First, as discussed at greater length above, the 2014 Hino cannot be considered a "temporary substitute" vehicle under the M&J Policy because the

22

uncontradicted evidence before the Court is that the 2012 Dodge was not out of service on the date of the Accident.

Second, even if the M&J Policy did contemplate coverage for a "hired" or "borrowed" vehicle that is <u>not</u> a temporary substitute auto, the evidentiary record would not allow the Court to conclude that M&J Auto "hired" or "borrowed" the 2014 Hino on the date of the Accident.   According to deposition testimony from Fraser, SDHunt's owner, SDHunt and M&J Auto had a verbal agreement pursuant to which SDHunt would operate <u>as a subcontractor</u> to complete certain towing jobs that M&J Auto received from AAA.   ECF No. 92-10, at 23-27.   Fraser further testified that, on the date of the Accident, following a request from M&J Auto to complete a towing job from AAA, Robinson (as an SDHunt employee) took the 2014 Hino (one of SDHunt's vehicles, listed on SDHunt's own commercial auto policy) to the scene of the Accident.   While M&J Auto subcontracted with SDHunt to complete the towing job, SDHunt undertook the job with its own employee and its own vehicle; M&J Auto did not "hire" or "borrow" the 2014 Hino to complete the job itself.[10]   <u>Id.</u> at 28 (confirming that Robinson, working as an SDHunt employee, was

---

[10] Plaintiff also argues that the 2014 Hino cannot be covered under the M&J Policy because it is covered under the commercial auto policy that Plaintiff itself issued to SDHunt.   ECF No. 92-1, at 10.   Plaintiff is correct that the Base Form provides that an "additional auto" or a "replacement auto" can only be an "insured auto" if "no other insurance policy provides coverage for that auto."   ECF No. 92-9, at 8-9.   However, this Court does not understand any party to be arguing that the 2014 Hino was either an "additional auto" or a "replacement auto," since either definition requires M&J Auto to <u>own</u> the vehicle, and it is undisputed that <u>SDHunt</u> owned the 2014 Hino at the time of the Accident.

operating the 2014 Hino at the time of the Accident and that SDHunt was not loaning the 2014 Hino to M&J Auto at that time).

In sum, the M&J Policy is not ambiguous with respect to the question of whether the 2014 Hino was an insured vehicle under the M&J Policy at the time of the Accident. The term "covered auto" in the Virginia Changes Endorsement cannot be reasonably read to expand the coverage provided by the M&J Policy so substantially as to encompass the 2014 Hino, which was owned by SDHunt and operated by an SDHunt employee in his capacity as such on the date of the Accident. Moreover, there are no facts from which a reasonable jury could conclude that the 2012 Dodge was out of service on the date of the Accident or that M&J Auto "hired" or "borrowed" the 2014 Hino on that date. Therefore, even if the facts and circumstances alleged in the Underlying Suit were ultimately proven, Plaintiff nonetheless would not be liable to provide either indemnity or a defense in that Suit under the terms of the M&J Policy.

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's motion for summary judgment. ECF No. 92. In light of this ruling, the Court **FINDS** that, under the terms of the M&J Policy (Policy No. 03212473-000), Plaintiff does not owe coverage for and does not owe a duty to defend against any claims, injuries, or damages set forth in Charles Brian Diggs, Administrator for the Estate of

24

Hailey Diggs, deceased v. The American Automobile Association, Inc., et al., Case No. CL2300751P-00, which is pending in the Circuit Court for the City of Newport News.

In light of this ruling, the Court also **GRANTS** Plaintiff's motions for default judgment against Defendants M&J Auto, Harvey, Robinson, and SDHunt (which the Court previously stayed pending the resolution of the claims against Defendants Diggs, Tidewater Automobile, and State Farm, ECF No. 85). ECF Nos. 78-81. Thus, this case is now fully resolved.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all Counsel of Record and to defendants M&J Auto Center, LLC, Marlon Harvey, Darrin Robinson, and SDHunt, LLC, at each of their last known addresses.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 31 , 2023